IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY DEMONE PAMPHILLE,

                              Petitioner,

v.                                                                   2:21-cv-00861-JB-JMR

RONALD MARTINEZ, Warden, and
RAÚL TORREZ,[1] Attorney General
for the State of New Mexico,

                              Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Anthony Pamphille's Petition Under 28

U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Respondents filed an answer, as ordered by

the Court. Docs. 5, 9. Mr. Pamphille filed a reply. Doc. 11. The Honorable District Judge James

O. Browning referred the case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct

hearings, if warranted, and to perform any legal analysis required to recommend to the Court an

ultimate disposition of this case. Doc. 14. Having reviewed the parties' submissions and the

relevant law, I recommend that the Court deny Mr. Pamphille's petition. Insofar as he asserts a

state law claim, it should be dismissed without prejudice. The remaining claims should be

dismissed with prejudice.

I.      **Background Facts and Procedural Posture**

On January 24, 2018, a jury in the Twelfth Judicial District for the State of New Mexico

found Mr. Anthony Pamphille guilty on three counts: second degree arson, fourth degree

breaking and entering, and a misdemeanor violation of restraining order prohibiting domestic

---

[1] Raúl Torrez became the New Mexico Attorney General on January 1, 2023. Pursuant to FED. R.
CIV. P. 25(d), he is automatically substituted in as the defendant in this action.

violence. Doc. 9-1 at 37 (Exh. K). Mr. Pamphille was sentenced to a total imprisonment term of thirteen years and six months less one day. Doc. 9-1 at 44 (Exh. M).

Mr. Pamphille was convicted of breaking into the mother of his child's home on March 25, 2017. Doc. 9-1 at 269–70 (Exh. LL). She had an order of protection against him, which prohibited him from being within one-hundred yards of her home. *Id.* According to the indictment, Mr. Pamphille broke that restraining order by breaking and climbing through a window in the home. Doc. 9-1 at 1–2 (Exh. A). While inside, the indictment further alleged that Mr. Pamphille set multiple rooms on fire. *Id.* at 1. The fire caused over $100,000 in property damage. Doc. 9-1 at 270 (Exh. LL).

**A. Trial**

While in jail awaiting trial, Mr. Pamphille made several recorded phone calls. *Id.* at 271. Two of those jail calls were referenced in the police report regarding this criminal case. Doc. 9-1 at 6 (Exh. B). On one of the calls, Mr. Pamphille admitted that he had previously entered the mother of his child's home through the window, but he denied doing so on the date he was accused. Doc. 9-1 at 561 (Exh. VV) ("[It] is all my fault because of the simple fact that the fuckin' dumb shit I was doing, going through the window and stuff like that. . . ."). Mr. Pamphille also denied setting the home on fire. *Id.* ("Nobody can say they seen me over there, because I wasn't there, point-blank, period. I did not do that fire.").

Prior to trial, Mr. Pamphille drafted a Motion for Disclosure of Discovery, requesting unedited recordings of the recorded jail phone calls. Doc. 9-1 at 5–7 (Exh. B). His attorney filed the Motion for Disclosure of Discovery, citing case law that indicated the attorney believed the motion was meritless. *Id.* at 5 (citing *State v. Franklin*, 1967-NMSC-151, 78 N.M. 127, 428 P.2d

2

982 and *State v. Boyer*, 1985-NMCA-029, 103 N.M. 655, 712 P.2d 1). The State responded that

the recordings were already provided to the defense. Doc. 9-1 at 8 (Exh. C). Defense counsel did

not contest this claim. After holding a hearing, the trial court denied the Motion for Disclosure of

Discovery. Doc. 9-1 at 36 (Exh. J).

On the second day of trial, state witness Detective Medina testified regarding the contents

of the two jail calls. 1/24/18 CD 10:58:57-11:01:45.[2] Defense counsel objected to mentioning the

jail calls out of context. Doc. 9-1 at 105 (Exh. S); 1/24/18 CD at 8:56:45-9:43:12. Defense

counsel argued several bases for the objection including admission by a party opponent, best

evidence rule, rule of completeness, more prejudicial than probative, prior consistent statement,

and that the recordings were inaccurate. 1/24/18 CD at 8:59:40-9:07:17; *id.* at 9:35:56-9:43:12.

The trial court overruled the objections. 1/24/18 CD 9:39:05-9:42:08.

Instead of reading a transcript of the calls, Detective Medina testified by reading his own

police report, wherein he paraphrased the calls. 1/24/18 CD 10:58:57-11:01:45. Defense counsel

did not object. Detective Medina read:

> Mr. Pamphille stated that he had gained access through the window of [the house],
> and he was not sure if anybody had seen him gain entry. Mr. Pamphille advised that
> the [house] had caught on fire, and he stated the house didn't actually burn down.
> Then, he stated that was what he had heard from someone else.

1/24/18 CD 11:00:13-11:00:43. Mr. Pamphille believes that Detective Medina's paraphrase took

the calls out of context to make them look more incriminating than they were. *See, e.g.*, Doc. 11

at 2. Defense counsel cross examined Detective Medina. 1/24/18 CD 10:58:57-11:02:43.

Defense counsel attempted to clarify that the call, paraphrased by Detective Medina, was not a

---

[2] All references to "CD" are to the Jury Trial CD from *State of New Mexico v. Anthony
Pamphille*, D-1215-CR-2017-170, which respondents lodged with the Clerk of Court. *See* Doc.
10.

confession. 1/24/18 CD 10:58:57-11:02:43. The actual call transcript was never presented at trial. Doc. 9-1 at 271 n.1 (Exh. II).

On January 24, 2018, a jury found Mr. Pamphille guilty of second degree arson, fourth degree breaking and entering, and a misdemeanor violation of a restraining order prohibiting domestic violence. Doc. 9-1 at 37 (Exh. K).

### B.  Appeal and State Habeas Petition

On February 27, 2018, Mr. Pamphille filed a *pro se* direct appeal of his conviction. Doc. 9-1 at 48–51 (Exh. N). The court appointed appellate counsel. Doc. 9-1 at 55–56 (Exh. Q). Upon full briefing, the New Mexico Court of Appeals considered four issues: (1) the sufficiency of the evidence, (2) whether the trial court erred by refusing to admit the recordings of the jail phone calls, (3) ineffective assistance of counsel, and (4) whether the trial court erred by denying the motion for disclosure of the jail calls. Doc. 9-1 at 200–36 (Exh. II); Doc. 9-1 at 238–54 (Exh. JJ); Doc. 9-1 at 267–93 (Exh. LL).

On August 27, 2020, the New Mexico Court of Appeals affirmed Mr. Pamphille's convictions. Doc. 9-1 at 267–93 (Exh. LL). It held that there was sufficient evidence for conviction, Mr. Pamphille's trial counsel was not unconstitutionally ineffective, and the trial court did not err by denying the motion for disclosure of the jail call recordings. *Id.* at 285–93. It also held that the trial court's failure to admit the entire recording of the jail phone calls violated the best evidence rule, NMRA, Rule 11-1002, but such error was harmless *Id.* at 276–81.

On September 28, 2020, Mr. Pamphille petitioned the New Mexico Supreme Court for a writ of certiorari on the same grounds as his direct appeal. Doc. 9-1 at 294–311 (Exh. MM). The New Mexico Supreme Court denied the petition. Doc. 9-1 at 312–13 (Exh. NN).

On December 1, 2020, Mr. Pamphille filed a *pro se* state petition for habeas corpus. Doc. 9-1 at 314–32 (Exh. OO). The state district court summarily dismissed the habeas petition. Doc. 9-1 at 483–84 (Exh. RR). Then, Mr. Pamphille filed a petition for a writ of certiorari to the New Mexico Supreme Court. Doc. 9-1 at 489–94 (Exh. UU). On June 4, 2021, the New Mexico Supreme Court denied the petition. Doc. 9-1 at 338 (Exh. WW). On September 1, 2021, Mr. Pamphille filed a timely habeas petition with this Court. *See* 28 U.S.C. § 2244(d) (providing a one-year statute of limitation for writs of habeas corpus, as tolled by pending state post-conviction review).

**II.     Mr. Pamphille's Claims**

Mr. Pamphille raises three grounds for relief in his Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. He argues that:

1.  His "right to confront his accuser was denied" when Detective Medina testified about the jail calls;

2.  He was "denied his right to a compulsory process" when the trial court denied his motion to receive a recording of his jail calls; and

3.  He was "denied his right to the effective assistance of counsel" when his attorney:

    a.  refused to argue for disclosure of the recorded jail phone calls,

    b.  refused to investigate the case,

    c.  failed "to put on any defense at all," and

    d.  "allowed Petitioner to go to trial and be convicted of a crime that never happened."

Doc. 1 at 5–9.

5

Notably, in Mr. Pamphille's petition, he only attached a legal argument regarding Ground One, his Confrontation Clause claim. Doc. 1-1 at 2–3. He did not make any arguments regarding Grounds Two and Three until his reply briefing. Doc. 11.

## III.    Exhaustion of Remedies

Generally, a state prisoner must exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). A federal issue is exhausted if it "has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted). The state may expressly waive the exhaustion requirement. 28 U.S.C. § 2254(b)(3); *Richwine v. Romero*, 462 F. App'x 770, 773 (10th Cir. 2011) (unpublished).

Habeas petitions that contain both exhausted and unexhausted claims are called "mixed" petitions. *Pliler v. Ford*, 542 U.S. 225, 227 (2004). This Court has limited options when presented with a mixed petition:

> (1) dismiss the mixed petition in its entirety . . . ; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims . . . ; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims . . . ; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit . . . .

*Fairchild v. Workman*, 579 F.3d 1134, 1156 (10th Cir. 2009) (internal citations omitted).

Mr. Pamphille filed a mixed petition. But the respondents have expressly waived the requirement that Mr. Pamphille exhaust his claims. Doc. 9 at 1. Respondents request that this

Court ignore the exhaustion requirement and deny the petition on the merits. *Id.* I agree that this is the best and most efficient way to handle Mr. Pamphille's mixed petition.

Those in custody pursuant to the judgment of a state court have a one-year statute of limitations to file a federal habeas claim. *See* 28 U.S.C. § 2254(d). While properly filed applications for state post-conviction or collateral review toll the statute of limitations, federal habeas petitions do not. *Rhines v. Weber*, 544 U.S. 269, 274–75 (2005) (citing *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001)). If the Court were to dismiss Mr. Pamphille's petition to allow him to exhaust his claims in state court, his exhausted claims would be time-barred were he to return to federal court. *See id.* Therefore, I recommend evaluating his claims on the merits.

## IV.    Federal Habeas Claims under the AEDPA

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 ("AEDPA"), govern this case. A petition for habeas corpus under § 2254 attacks the constitutionality of a state prisoner's conviction and continued detention. A federal court cannot grant habeas relief pursuant to § 2254(d) with respect to any claim adjudicated on the merits by a state court unless the petitioner's state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), there is a two-step inquiry. The threshold question is whether the applicant seeks to invoke a rule of law that was clearly established by the Supreme Court at the time the conviction became final. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011); *see*

*also Williams v. Taylor*, 529 U.S. 362, 390 (2000). If the law was clearly established, then the court determines whether the state court decision was "contrary to or involved the unreasonable application of that clearly established federal law." *Byrd*, 645 F.3d at 1165 (quoting *Turrentine v. Mullin*, 390 F.3d 1181, 1189 (10th Cir. 2004)) (internal quotation marks omitted).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A state court decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [those] cases." *Id*. at 405. The Supreme Court has interpreted the term "contrary to" as meaning, *inter alia*, "diametrically different" and "opposite in character and nature." *Id.* Therefore, habeas relief under § 2254(d)(1) may be granted only where the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003). The state court need not cite applicable Supreme Court cases or even to be aware of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court decision unreasonably applies Supreme Court precedent if it "identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. However, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court . . . [applied] clearly established federal law erroneously or

incorrectly." *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003) (internal quotation marks and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76.

Under AEDPA, state court findings of fact are "presumed to be correct." 28 U.S.C. § 2254(e)(1). Accordingly, petitioners challenging a state court's decision based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2) must show by clear and convincing evidence that the determination was factually erroneous. *See Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).

Lastly, where state courts have adjudicated a claim on its merits, federal courts are limited to reviewing the record as it stood before the state courts. *Cullen v. Pinholster*, 563 U.S. 179, 180–81 (2011) (citing § 2254(d)(1)). In other words, federal courts may not hold evidentiary hearings on claims that the state court decided on their merits. *Id.* at 181; *Littlejohn v. Trammell*, 704 F.3d 817, 857 (10th Cir. 2013). "'Adjudicated on the merits' [means] a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Wilson v. Workman*, 577 F.3d 1284, 1308 (10th Cir. 2009) (internal quotation marks omitted), *overruled on other grounds as recognized in Lott v. Trammell*, 705 F.3d 1167 (10th Cir. 2013). Thus, summary decisions, even those completely devoid of any reasoning at all, can constitute decisions "on the merits" for purposes of AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state's highest court offers no explanation for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [federal courts] owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). The Supreme Court has held that the standard is "highly deferential" to state courts and "difficult to meet," as it "demands that state-court decisions be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (quoting *Richter*, 562 U.S. at 101; *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)); *see also Black v. Workman*, 682 F.3d 880, 891 (10th Cir. 2012) ("Under [AEDPA,] a federal court in a § 2254 proceeding must be exquisitely deferential to the state court's resolution of the [petitioner's] claims.").

For federal habeas claims not adjudicated on the merits in state courts, the Court must review the claim *de novo*, and the deferential standards of § 2254(d) do not apply. *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

Finally, pleadings by *pro se* litigants are "to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That means "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. . . ." *Id.* Still, a court may not "assume the role of advocate for the *pro se* litigant." *Id.*

## V. Analysis

For each of his three grounds, Mr. Pamphille fails to show that he is entitled to habeas relief. Regarding Ground One, Mr. Pamphille's Confrontation Clause rights were not violated. Ground Two raises claims of both a state law violation and a *Brady* violation. The state law violation is non-cognizable. Mr. Pamphille fails to show that the state court erred when it denied his *Brady* claim. As to Ground Three, Mr. Pamphille fails to show that the state court erred when

it denied his ineffective-assistance-of-counsel claim. Therefore, I recommend that the Court deny Mr. Pamphille's § 2254 petition.

### A.    Mr. Pamphille's right to confront his accuser was not denied. (Ground One)

In Ground One of his petition, Mr. Pamphille argues his "right to confront his accuser was denied." Doc. 1 at 6. In support of this contention, he states:

> The trial court allowed [Detective Medina] to testify using quotes that he allegedly made from the recorded phone calls from Petitioner, while detained, but refused Petitioner's request to obtain the actual recorded calls that the notes and quotes allegedly originated from.

*Id.* Respondents argue that Mr. Pamphille's Confrontation Clause rights were not violated because his attorney cross-examined Detective Medina at trial. Doc. 9 at 20. I agree with respondents.

This petition is the first time Mr. Pamphille raises a Confrontation Clause argument. As such, this claim has not been "properly presented to the highest state court." *Dever*, 36 F.3d at 1534. Because Mr. Pamphille's Confrontation Clause claim is unexhausted, this Court reviews the claim *de novo*. *Gipson*, 376 F.3d at 1196.

The Confrontation Clause of the Sixth Amendment of the U.S. Constitution provides, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. Criminal defendants are entitled to a "a face-to-face meeting with witnesses appearing before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 844 (1990) (quoting *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988)). The Confrontation Clause further

> (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits

the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* at 845–46 (quoting *California v. Green*, 399 U.S. 149, 158 (1970). Generally, if these elements—oath, cross examination, observation by the trier of fact, plus physical presence—are met, then the Confrontation Clause is satisfied. *Id.* at 846. The Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) (emphasis in original) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)).

Here, Mr. Pamphille had the opportunity to confront Detective Medina. Detective Medina was physically present at trial. Doc. 9 at 20. He was under oath. *Id.* He was cross examined by Mr. Pamphille's attorney. *Id.* Detective Medina's testimony was observed by the jury. *Id.* During cross examination, Mr. Pamphille's attorney specifically questioned Detective Medina about the jail calls. 1/24/18 CD 10:58:57-11:02:43. While Detective Medina's cross examination was perhaps not a model of clarity, there was a sufficient opportunity for an effective cross examination. *See Kentucky*, 482 U.S. at 739. As such, Mr. Pamphille was not denied his right to confront Detective Medina.

Further, Mr. Pamphille does not have a Confrontation Clause right to confront the recordings of his own phone calls. Mr. Pamphille argues that because "no one except the detective was ever allowed to hear what the detective alone alleged was heard on the recording," that the Detective's testimony regarding the jail phone calls was not subject "to rigorous testing in an adversary proceeding before the trier of fact." Doc. 1-1 at 2–3 (quoting *Maryland*, 497 U.S. at 837). However, the prosecutor and Mr. Pamphille's defense attorney had opportunities to

12

listen to the calls. Doc. 9-1 at 8 (Exh. C). Both attorneys also had transcripts of the calls at trial.

1/24/18 CD 9:35:56-9:36:12. And Detective Medina was cross examined as to the contents of the

calls. 1/24/18 CD 10:58:57-11:02:43. Indeed, the physical recording of Mr. Pamphille's calls is

not a "witness" for the purposes of the Confrontation Clause. Mr. Pamphille's right to confront

the witnesses against him was not violated because he did not receive the recordings of his jail

phone calls.

Mr. Pamphille's Confrontation Clause rights were not violated. I therefore recommend

that Ground One of Mr. Pamphille's § 2254 petition be denied with prejudice.

**B.     Mr. Pamphille fails to show that he is entitled to relief in Ground Two.**

As explained below, I read Ground Two of Mr. Pamphille's petition as raising both a state

law claim and a *Brady* claim. The former is non-cognizable; the latter fails to meet the burden for

granting habeas relief.

In Ground Two of his petition, Mr. Pamphille argues that he was "denied his right to a

compulsory process to obtain witnesses/evidence in his defense." Doc. 1 at 7. In support of this

claim he states,

> Petitioner was denied his written motion/request to have the two recorded phone
> calls disclosed to him even though the detective used the recordings to develop a
> transcript that he took "notes" from to testify at the Grand Jury, where he was the
> only witness, and at the trial. At no stage was Petitioner allowed to obtain or listen
> to the actual recordings to find out their value to his defense.

*Id.* The "motion/request" Mr. Pamphille refers to is his pretrial Motion for Disclosure of

Discovery. *See* Doc. 9-1 at 5–7 (Exh. B). In that motion, he requested recordings of two phone

calls he made while in jail that were used against him at trial. *Id.* There is a dispute as to whether

Mr. Pamphille's trial counsel received these recordings. *E.g.*, Doc. 9-1 at 8 (Exh. C) (The State

claims, "The recordings of phone conversations of the defendant has [sic] previously been disclosed to the defense."); Doc. 11 at 3 (Mr. Pamphille alleges that the State's claim is not true). But in denying Mr. Pamphille's *Brady* claim, the New Mexico Court of Appeals made a finding of fact that Mr. Pamphille's attorney did receive the recordings. *See* Doc. 9-1 at 287 (Exh. LL).

In response to Ground Two, the respondents characterize the claim as a state law error. Doc. 9 at 22. The respondents contend that Ground Two raises "at most a challenge to [the trial] court's discovery and/or evidentiary rulings." *Id.* at 21. Therefore, they argue that the claim is non-cognizable under federal habeas review. *Id.* at 22; *see Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.") (internal quotation and citations omitted).

With the benefit of greater context, specifically the additional arguments raised in Mr. Pamphille's reply brief, I disagree with the respondents' characterization of the Ground Two claim. Based on the petition alone, it was difficult to ascertain the legal basis for the Ground Two claim. The language used in Mr. Pamphille's petition suggests that he was making a Sixth Amendment Compulsory Process Clause claim, at least in part. *Compare* U.S. CONST. amend. VI (providing the accused a right to "compulsory process for obtaining witnesses in his favor."), *with* Doc. 1 at 7 ("Petitioner was denied his right to a compulsory process to obtain witness/evidence in his defense."). Yet, Mr. Pamphille's petition does not point to any "witness" in his favor that he was unable to obtain.

14

Mr. Pamphille's reply is the first time he makes any legal argument regarding his Ground Two claim.[3] Doc. 11 at 2–3. His reply reveals two legal bases for his Ground Two claim. The first legal basis is an alleged *Brady* violation based on not being provided his jail call recordings. *Id.* at 2 ("The Supreme Court held that the compulsory process clause of the 6th Amendment may sometimes be more properly evaluated under the due process clause (because of *Brady v. Maryland*).") (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)) (parenthetical in original).[4] The second legal basis is an alleged violation of New Mexico state law, again based on not being provided his jail call recordings. *Id.* at 3. Mr. Pamphille states that Article II, Section 18 of the New Mexico Constitution (the due process clause) and NMRA, Rule 5-501(A)(3) (a discovery disclosure rule) were violated when he was not given the recordings of his jail calls. *Id.* As such, I read Ground Two as raising both a state law claim and a *Brady* claim based on not receiving the jail call recordings. Neither of these claims entitles Mr. Pamphille to federal habeas relief.

### i.     State Law Claim

Mr. Pamphille argues that not being given the jail call recordings violated the due process clause of the New Mexico Constitution and NMRA, Rule 5-501(A)(3). Doc. 11 at 2–3. In relevant part, NMRA, Rule 5-501(A)(3) requires the State to disclose tangible evidence that is

---

[3] Generally, the Court "do[es] not consider arguments raised for the first time in a reply brief." *Pinder v. Crowther*, 803 F. App'x 165, 176 (10th Cir. 2020) (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 676 n.9 (10th Cir. 2016). Yet, in the interest of liberally construing Mr. Pamphille's *pro se* habeas petition, I address his Ground Two arguments on the merits. *See Hall*, 935 F.2d at 1110.

[4] Mr. Pamphille mischaracterizes the holding in *Pennsylvania v. Ritchie*. In *Ritchie*, the Supreme Court declined to decide whether the Sixth Amendment requires the State to produce exculpatory evidence because the well-developed case law under the Due Process Clause, like *Brady*, provides even broader protections. 480 U.S. at 56.

material to the preparation of the defense to the defendant. Understandably, respondents did not

respond to this claim because the basis was not ascertainable from the petition alone. As

explained below, the Ground Two state law claim is non-cognizable.

On habeas review, federal courts do not examine state law errors. *Estelle*, 502 U.S. at 67–

68. Federal courts review state convictions for violations of federal law. *Id.* While a state law

error can violate a federal constitutional right, in such a case, the petitioner is required to draw a

connection between his constitutional right and the state law error. *Leatherwood v. Allbaugh*, 861

F.3d 1034, 1043 (10th Cir. 2017) (internal citations omitted). To draw such a connection, a

habeas petitioner must explicitly name the constitutional right that was violated and include a

statement of the relevant facts entitling him to relief. *Id.* Under federal habeas review, non-

cognizable claims are generally dismissed without prejudice, while claims that fail on the merits

are dismissed with prejudice. *See, e.g.*, *Rael v. Williams*, 223 F.3d 1153, 1155 (10th Cir. 2000)

(dismissing cognizable claims with prejudice and non-cognizable claims without as related to a

habeas petition under 28 U.S.C. § 2241).

Here, Mr. Pamphille only raises a state law error. He fails, however, to connect the

alleged violation of the New Mexico Constitution and the New Mexico Rule of Criminal

Procedure to a violation of a federal right, explicitly or implicitly. Because Mr. Pamphille only

argues that state law is violated, the claim is non-cognizable. I therefore recommend the Court

dismiss the state law claim without prejudice.

### ii.  *Brady* Claim

Mr. Pamphille argues that his *Brady* rights were violated because the prosecuting

attorney did not give him a recording of his jail calls. Doc. 11 at 2–3. As noted above, the

16

respondents did not have any opportunity to respond to this claim because it was first raised in Mr. Pamphille's reply brief. *Id*. Regardless, I find Mr. Pamphille fails to show that the state court erred when it denied his *Brady* claim.

Mr. Pamphille first argued that not receiving his call recordings violated his *Brady* rights on direct appeal. Doc. 9-1 at 236 (Exh. II). The New Mexico Court of Appeals denied the claim. Doc. 9-1 at 288 (Exh. LL). Then, in a petition for writ of certiorari, Mr. Pamphille raised his *Brady* claim before the New Mexico Supreme Court. Doc. 9-1 at 309–10 (Exh. MM). That petition was denied. Doc. 9-1 at 312–13 (Exh. NN). Because the New Mexico Supreme Court had the opportunity to decide whether Mr. Pamphille's *Brady* rights were violated when he was not given access to the recordings of his jail phone calls violation, his *Brady* claim is exhausted. *See Dever*, 36 F.3d at 1534.

Because his *Brady* claim is exhausted, I review Mr. Pamphille's *Brady* claim through the lens of 28 U.S.C. § 2254(d)(1–2). The last reasoned decision denying Mr. Pamphille's *Brady* claim was the New Mexico Court of Appeals decision (Doc. 9-1 at 288 (Exh. LL)). *See Wilson*, 138 S.Ct. at 1192 (2018).

Under *Brady v. Maryland*, the State has an affirmative duty to turn over exculpatory evidence to defendants. 373 U.S. 83, 87 (1963). There are three elements to a *Brady* claim: (1) the evidence at issue must be favorable to the accused, (2) the State must have suppressed the evidence, and (3) the accused must have been prejudiced by the suppression. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (citing *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). Even inadvertent suppressions violate *Brady*. *Stickler*, 527 U.S. at 282. If a court finds that the State did not suppress evidence, a court is not required address the other two *Brady* elements. *United*

*States v. Lopez*, 372 F.3d 1207, 1211 (10th Cir. 2004). On federal habeas review, a state court is not required to demonstrate awareness of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts [that precedent]." *Early*, 537 U.S. at 8.

Mr. Pamphille fails to show that the state court decision denying his *Brady* claim was contrary to clearly established federal law. *See* § 2254(d)(1). The New Mexico Court of Appeals correctly noted *Brady* as the applicable law. Doc. 9-1 at 288. It cited New Mexico case law applying *Brady* as a basis for denying Mr. Pamphille relief. *Id.* (citing *State v. Balenquah*, 2009-NMCA-055, 146 N.M. 267, 208 P.3d 912). While the New Mexico Court of Appeals did not explicitly discuss the *Brady* elements, it did not need to. *See Early*, 537 U.S. at 8. The New Mexico Court of Appeals decision denying Mr. Pamphille's *Brady* claim was clearly not contrary to federal law.

Mr. Pamphille also fails to show that the state court decision denying his *Brady* claim unreasonably applied federal law. *See* § 2254(d)(1). The New Mexico Court of Appeals denied Mr. Pamphille's *Brady* claim because it found that the State did not suppress the call recordings. Doc. 9-1 at 288 (Exh. LL) ("Neither Defendant, nor his counsel, contested the State's contention that it disclosed all of the requested evidence to defense counsel.") The New Mexico Court of Appeals further stated,

> Defendant does not cite to, and we are not aware of, any authority for the proposition that the State has an independent duty to ensure that defense counsel provides Defendant with his own copy of disclosed materials. *See State v. Balenquah*, 2009-NMCA-055, ¶ 12, 146 N.M. 267, 208 P.3d 912 (stating that in order to prove a *Brady* violation, a defendant must prove, inter alia, that the prosecution *suppressed* evidence).

18

*Id.* Mr. Pamphille does not supply such precedent here either. As discussed below, this Court must presume that the State gave the call recordings to Mr. Pamphille's defense counsel. *See* 28 U.S.C. § 2254(e)(1) (state court findings of fact are "presumed to be correct"). The New Mexico Court of Appeals reasonably found that there was no *Brady* violation because the State did not suppress the recordings. Mr. Pamphille does not point to a Supreme Court case where a defendant's *Brady* rights were violated when a prosecutor provided exculpatory evidence to the defense attorney, but the evidence was not given to the defendant. Nor does he point to any other similar Supreme Court precedent to support his claim. He does not explain how the New Mexico Court of Appeals erred at all. As such, Mr. Pamphille fails to show that the state court decision denying his *Brady* claim unreasonably applied clearly established federal law.

Finally, Mr. Pamphille fails to show that the state court's decision denying his *Brady* claim was based on an unreasonable determination of facts. *See* § 2254(d)(2). Mr. Pamphille raises one issue of fact—he does not believe the State gave the call recordings to his defense counsel. Doc. 1 at 7. In denying his *Brady* claim, the New Mexico Court of Appeals explicitly found that Mr. Pamphille's defense counsel received a recording of the jail calls. Doc. 9-1 at 288 (Exh. LL). That finding was based on the state's representation that it provided the recordings, and that neither Mr. Pamphille nor his defense counsel contested that representation. *Id.* Under § 2254(e)(1), state court findings of facts are "presumed to be correct." Mr. Pamphille argues, "In all of petitioner's assertions in every proceeding no one offers/presents any proof that petitioners [sic] claim [that he and his attorney did not receive the call recordings] isn't in fact true." Doc. 11 at 3. Mr. Pamphille misunderstands his burden of proof. Others need not produce evidence disproving Mr. Pamphille's factual claim. Instead, Mr. Pamphille must prove that it was

*unreasonable* for the state court, based on the information it had, to determine that his attorney received the call recordings. It was not unreasonable for the New Mexico Court of Appeals to take the prosecuting attorney, who is an officer of the court, at his word that he provided the call recordings. It further was not unreasonable to acknowledge the lack of objection from either Mr. Pamphille or his attorney to the prosecuting attorney's claims of production as further support for the Court of Appeals' conclusion. Therefore, the state court did not make an unreasonable determination of facts when it denied Mr. Pamphille's *Brady* claim.

Mr. Pamphille fails to show that he is entitled to habeas relief in Ground Two. His state law claim is non-cognizable. I recommend the Court dismiss the state law claim without prejudice. Regarding his *Brady* claim, Mr. Pamphille fails to demonstrate that the state court erred when it denied the claim. I recommend that the Court dismiss his Ground Two *Brady* claim with prejudice.

### C.    Mr. Pamphille fails to show that he is entitled to relief for his Ground Three ineffective-assistance-of-counsel-claims.

In Ground Three of his petition, Mr. Pamphille argues that he "was denied his right to the effective assistance of counsel in his defense." Doc. 1 at 8. In support of this claim, he states,

> Petitioner's Counsel refused to argue Petitioner's motion for disclosure of the CD recordings of the phone calls; he refused to investigate the case and to put on any defense at all; and allowed Petitioner to go to trial and be convicted of a crime that never happened.

*Id.* Respondents argue that the state courts' rejection of his ineffective-assistance claims was not contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of fact. Doc. 9 at 22–26. Therefore, they assert that Mr. Pamphille is

not entitled to relief under 28 U.S.C. § 2254 based on his ineffective-assistance-of-counsel claims. *Id.* at 26. I agree with the respondents.

Courts evaluate ineffective-assistance-of-counsel claims under the two-prong test described in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Under *Strickland*, a petitioner must show by a preponderance of the evidence both that his or her counsel's performance "fell below an objective standard of reasonableness" *and* that "the deficient performance prejudiced the defense." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Byrd v. Workman*, 645 F.3d 1159, 1167 (10th Cir. 2011)) (emphasis in original). Courts identify these prongs as the performance prong and the prejudice prong. *See, e.g.*, *Boltz v. Mullin*, 415 F.3d 1215, 1222 (10th Cir. 2005). "These two prongs may be addressed in any order, and failure to satisfy either is dispositive." *Hooks v. Workman,* 689 F.3d 1148, 1186 (10th Cir. 2012). To demonstrate prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Regarding the performance prong, courts must presume that "counsel's actions constituted sound strategy." *Boltz*, 415 F.3d at 1222.

The *Strickland* test is clearly established federal law within the meaning of § 2254(d). *Cullen*, 563 U.S. at 189. A court reviewing an ineffective-assistance-of-counsel claim under both AEDPA and *Strickland* is "highly deferential, and when the two apply in tandem, review is 'doubly' so." *Simpson*, 912 F.3d at 594 (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). "We defer to the state court's determination that counsel's performance was not deficient and, further, defer to the attorney's decision in how to best represent a client." *Hooks*, 689 F.3d at 1187 (citations omitted).

If a claim was adjudicated on the merits by a state court, then the reviewing federal court defers to the state court's decision, as set forth in § 2254(d). Yet, "if the state court did not decide a claim on the merits, and the claim is not otherwise procedurally barred, we address the issue de novo and the § 2254(d)[] deference requirement does not apply." *Gipson*, 376 F.3d at 1196. A claim is "adjudicated on the merits" if the state court made a final decision based on the substance of the claim. *Wilson*, 577 F.3d at 1308.

Mr. Pamphille alleges four ways his attorney was ineffective: (1) by refusing to argue the motion requesting the jail call recordings, (2) by refusing to investigate the case, (3) by failing to put on any defense, and (4) by allowing Mr. Pamphille to go to trial where he was convicted. Doc. 1 at 8. I analyze each alleged error separately.

> ### i.   Refusing to argue the motion for disclosure of the jail call recordings (Claimed Error One)

Mr. Pamphille fails to show that the New Mexico Court of Appeals erred when it decided his counsel was not ineffective for failing to argue the motion for disclosure of the jail call recordings.

Mr. Pamphille first argued that his trial counsel was ineffective on direct appeal. Doc. 9-1 at 50–51 (Exh. N); Doc. 9-1 at 160–61 (Exh. BB); Doc. 9-1 at 232–35 (Exh. II). In relevant part, Mr. Pamphille argued that his defense counsel was ineffective because he failed to pursue a meritorious *Brady* claim by not arguing for disclosure of the jail recordings. Doc. 9-1 at 232–34 (Exh. II). The New Mexico Court of Appeals denied the appeal. Doc. 9-1 at 287–93 (Exh. LL). The New Mexico Court of Appeals held that Mr. Pamphille's *Brady* rights were not violated because the call recordings were disclosed to defense counsel. *Id.* at 288. Mr. Pamphille filed a petition for writ of certiorari to the New Mexico Supreme Court. Doc. 9-1 at 307–10 (Exh. MM).

It was denied. Doc. 9-1 at 312–13 (Exh. NN). Because the last reasoned decision regarding this error was from the New Mexico Court of Appeals, I apply § 2254(d) deference to that decision. *See Wilson*, 138 S.Ct. at 1192.

The New Mexico Court of Appeals decision denying Mr. Pamphille's ineffective-assistance-of-counsel claim was not contrary to *Strickland*. *See* § 2254(d)(1). The New Mexico Court of Appeals applied New Mexico state law when deciding Mr. Pamphille's ineffective-assistance-of-counsel claim. *See, e.g.*, Doc. 9-1 at 289–90 (Exh. LL) (citing *State v. Bahney*, 2012-NMCA-039, 274 P.3d 134). It accurately described both the prejudice and performance prongs of *Strickland*. *Id.* The New Mexico law regarding ineffective assistance of counsel closely mirrors federal law. *See, e.g.*, *Jones v. Santiestevan*, No. 91-cv-727, 2022 WL 2355470, at *4 (D.N.M. June 30, 2022) (noting the same). The New Mexico Court of Appeals did not and was not required to cite *Strickland* in its decision. *See Early*, 537 U.S. at 8. The New Mexico Court of Appeals decision denying Mr. Pamphille's ineffective-assistance-of-counsel claim was not contrary to federal law. Mr. Pamphille fails to show that the New Mexico Court of Appeals unreasonably applied federal law when it denied his claim that his attorney was ineffective for failing to argue for disclosure of the call recordings. *See* § 2254(d)(1). The New Mexico Court of Appeals held that Mr. Pamphille's defense attorney's performance was not deficient. Doc. 9-1 at 289–93 (Exh. LL). More specifically, the New Mexico Court of Appeals found that Mr. Pamphille's attorney *did* receive the call recordings. Doc. 9-1 at 288 (Exh. LL). Therefore, it was not necessary to argue for their disclosure in the first place.

Mr. Pamphille does not make any legal arguments regarding his ineffective-assistance-of-counsel claim until his reply brief. Doc. 11 at 3–5. Then, in his reply brief, he argues only that

his counsel was ineffective, but offers no argument as to how the Court of Appeals erred. *Id.* He

does not mention the New Mexico Court of Appeals decision once in his petition. He does not

direct this Court to Supreme Court precedent that is "materially indistinguishable" from the facts

of his case. *See Price*, 538 U.S. at 640. He simply does not explain how the New Mexico Court

of Appeals erred at all. Therefore, Mr. Pamphille fails to show that the New Mexico Court of

Appeals decision unreasonably applied federal law when it decided that his counsel was not

ineffective for failing to argue the motion for disclosure of the call recordings.

Finally, as discussed *supra* § V.B.ii, the New Mexico Court of Appeals did not make an

unreasonable determination of fact when it found that Mr. Pamphille's attorney did receive the

jail call recordings. *See* § 2254(d)(2). As such, Mr. Pamphille fails to show that the New Mexico

Court of Appeals erred when it denied the claim that his counsel was ineffective for failing to

argue the motion for disclosure of the jail recordings.

### ii.     Refusing to investigate (Claimed Error Two)

Mr. Pamphille fails to show that the state district court erred when it denied his claim that

his defense counsel was ineffective for failing to investigate his case.

In his *pro se* state habeas petition in the district court, Mr. Pamphille originally argued

that his defense counsel failed to adequately investigate his case. Doc. 9-1 at 314–19 (Exh. OO).

He detailed numerous ways that his counsel apparently failed to do so. *Id.* The state district court

denied the habeas petition. Doc. 9-1 at 483–84 (Exh. RR). In relevant part, it held that Mr.

Pamphille presented "insufficient facts to support a conclusion that counsel's performance was

deficient and that such deficiency prejudiced the defense." *Id.* at 484. In his petition for writ of

certiorari to the New Mexico Supreme Court regarding the state habeas petition, Mr. Pamphille

argued that his counsel was ineffective for failing to present evidence that discredited the testimony of three of the prosecution's key witnesses, in relevant part, because the attorney did not investigate the witnesses' claims. Doc. 9-1 at 491–92 (Exh. UU). That petition was denied. Doc. 9-1 at 669 (Exh. WW). Because the last reasoned decision regarding the failure-to-investigate error was the state district court's habeas decision, I apply § 2254(d) deference to that decision. *See Wilson*, 138 S.Ct. at 1192.

The state district court's decision denying Mr. Pamphille's ineffective-assistance-of-counsel claim was not contrary to *Strickland*. *See* § 2254(d)(1). The state court correctly identified *Strickland* as the applicable Supreme Court precedent. Doc. 9-1 at 484 (Exh. RR). It identified the two prongs of the *Strickland* test. *Id.* It also applied state law regarding ineffective assistance of counsel. *Id.* (citing *State v. Orona*, 1982-NMSC-002, 97 N.M. 232, 638 P.2d 1077 and *State v. Lopez*, 1996-NMSC-036, 122 N.M. 63, 920 P.2d 1017). As mentioned above, New Mexico and federal ineffective assistance of counsel law are substantially the same. The state district court's decision denying Mr. Pamphille's ineffective-assistance-of-counsel claim was not contrary to federal law.

Mr. Pamphille fails to show that the state district court unreasonably applied federal law when it denied his claim that his counsel was ineffective for failing to investigate the case. *See* § 2254(d)(1). The state district court found that Mr. Pamphille "fail[ed] to allege any facts sufficient to support his claims that defense counsel's performance was so defective as to require reversal of a conviction." Doc. 9-1 at 484 (Exh. RR). It held that there were insufficient facts to meet either the *Strickland* performance prong or prejudice prong. *Id.* Here, Mr. Pamphille makes the same error yet again. *See Cummings v. Sirmons*, 506 F.3d 1211, 1228–29 (10th Cir. 2007)

25

(rejecting a failure-to-investigate-claim where petitioner presented "no actual evidence" to support his assertions, noting that petitioner's "allegations amounted to little more than speculation"). As respondents point out, Mr. Pamphille has not met his burden of showing that the state district court's decision was an unreasonable application of law. Doc. 9 at 25. He does not reference the state district court's decision in his petition. He does not explain how the state district court erred when denying his failure-to-investigate claim. He does not provide any Supreme Court precedent with facts "materially indistinguishable" from his failure-to-investigate claim. *See Price*, 538 U.S. at 640. Quite simply, Mr. Pamphille fails to show how the state court unreasonably applied federal law when it denied the claim that his counsel was ineffective for failing to investigate the case.

Finally, Mr. Pamphille does not argue that the state court made an unreasonable determination of facts when deciding his failure-to-investigate claim. *See* § 2254(d)(2). Therefore, Mr. Pamphille fails to show that the state district court erred when it denied the claim that his attorney was ineffective for failing to investigate his case.

### iii.   Failing to put on any defense at all (Claimed Error Three)

Mr. Pamphille fails to show that the New Mexico Court of Appeals erred when it denied his claim that his counsel was ineffective for failing to "put on any defense at all." Doc. 1 at 8.

On direct appeal, Mr. Pamphille argued that his counsel was ineffective because he "did not put on a defense of any kind, but merely rested after the close of the State's case." Doc. 9-1 at 235 (Exh. II). The New Mexico Court of Appeals denied the appeal. Doc. 9-1 at 287–93 (Exh. LL). In doing so, the Court of Appeals found that Mr. Pamphille failed to demonstrate that the trial attorney's decision "not to present witnesses and 'put on a defense' was not a strategic

choice or that the decision prejudiced the defense." *Id.* at 293.[5] Mr. Pamphille filed a petition for

writ of certiorari to the New Mexico Supreme Court. Doc. 9-1 at 307–10 (Exh. MM). It was

denied. Doc. 9-1 at 312–13 (Exh. NN).

While Mr. Pamphille's claim that his attorney failed to put on a defense is nonspecific,

because he used identical language on direct appeal, I read his claim here as re-raising the

argument that his counsel was ineffective for failing to present witnesses in his defense.[6] *See*

*Hall*, 935 F.2d at 1110 (holding that *pro se* pleadings should be liberally construed); *compare*

Doc. 1 at 8 (arguing that his attorney refused to "put on any defense at all"), *with* Doc. 9-1 at 235

(Exh. II) (arguing that his attorney "did not put on any a defense of any kind, but merely rested

after the close of the State's case"). As the New Mexico Supreme Court denied certiorari, the last

reasoned decision on this alleged error was the decision from New Mexico Court of Appeals. *See*

*Trout v. Jones*, 382 F. App'x 691, 693 (10th Cir. 2010) (noting that a dismissal for failure to state

a claim is a judgment on the merits). As such, I apply § 2254 deference to the New Mexico Court

of Appeals decision regarding Mr. Pamphille's claim that his attorney failed to put on a defense.

The New Mexico Court of Appeals did not unreasonably apply federal law when it

denied the claim that Mr. Pamphille's counsel was ineffective for not putting on a defense. *See* §

2254(d)(1). The New Mexico Court of Appeals found that Mr. Pamphille did not demonstrate

that his counsel's "decision not to present witnesses and 'put on a defense' at the close of the

---

[5] Although the New Mexico Court of Appeals stated that it "decline[d] to address the inadequately developed argument," (Doc. 9-1 at 293), the Court reads the decision as denying Mr. Pamphille's claim on the merits because the Court of Appeals found that he failed to show error under either of the *Strickland* prongs.

[6] Without doing so, Mr. Pamphille's argument that his counsel was ineffective for failing to put on a defense would fail to state a claim.

State's case was not a strategic choice or that the decision prejudiced the defense." Doc. 9-1 at 293 (Exh. LL). Here, Mr. Pamphille similarly fails to adequately develop this argument. He does not reference the New Mexico Court of Appeals decision. He does not explain how the New Mexico Court of Appeals erred when it denied his failure-to-put-on-a-defense claim. He does not provide any Supreme Court precedent with facts "materially indistinguishable" from his failure-to-put-on-a-defense claim. *See Price*, 538 U.S. at 640. As such, he fails to show that the New Mexico Court of Appeals unreasonably applied clearly established federal law when it denied the claim that his counsel was ineffective for not putting on a defense.

As discussed *supra* § V.C.i., the New Mexico Court of Appeals decision denying Mr. Pamphille's ineffective-assistance-of-counsel claim was not contrary to *Strickland*. *See* § 2254(d)(1). Further, he fails to argue that the New Mexico Court of Appeals made an unreasonable determination of fact when assessing his claim that his attorney was ineffective for failing to put on a defense. *See* § 2254(d)(2). Therefore, Mr. Pamphille fails to show that the New Mexico Court of Appeals erred when it denied the claim that his attorney was ineffective for failing to put on a defense.

### iv.    Allowing Mr. Pamphille to go to trial where he was convicted (Claimed Error Four)

Mr. Pamphille's fourth claimed error—that his attorney allowed him to go to trial and be convicted—is not an error. This petition is the first time Mr. Pamphille argues that his counsel was ineffective for allowing him to go to trial. Therefore, I review the claim *de novo*. *See Gipson*, 376 F.3d at 1196.

Mr. Pamphille's attorney did not err when he allowed his client to go to trial. Mr. Pamphille's only alternative to trial was taking a plea deal. Pleas must be made voluntarily.

*Boykin v. Alabama*, 395 U.S. 238 (1969). There is no evidence in the record that Mr. Pamphille was willing to take a plea deal, and Mr. Pamphille's attorney could not have forced his client to waive his constitutional right to a trial. Because the attorney did not err in this regard, his conduct did not fall below an "objective standard of reasonableness." *See Simpson*, 912 F.3d at 593. Mr. Pamphille fails to establish that his counsel was ineffective for allowing him to go to trial where he was convicted.

Mr. Pamphille fails to demonstrate that he is entitled to habeas relief for any of his four potential bases for ineffective assistance of counsel. Therefore, Mr. Pamphille's Ground Three ineffective-assistance-of-counsel claim fails. I recommend that the Court dismiss with prejudice Ground Three of Mr. Pamphille's § 2254 petition.

## VI.    Recommendation

Mr. Pamphille asserts three grounds for habeas relief. He argues that:

1.  His "right to confront his accuser was denied" when Detective Medina testified about the jail calls;

2.  He was "denied his right to a compulsory process" when the trial court denied his motion to receive a recording of his jail calls;

3.  He was "denied his right to the effective assistance of counsel" when his attorney:

    a.  refused to argue for disclosure of the recorded jail phone calls,

    b.  refused to investigate the case,

    c.  failed "to put on any defense at all," and

    d.  "allowed Petitioner to go to trial and be convicted of a crime that never happened."

Doc. 1 at 5–9.  Mr. Pamphille fails to show that he is entitled to habeas relief for any of these three grounds. I therefore recommend that the Court deny Mr. Pamphille's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1). I further recommend that Mr. Pamphille's claim that not being given the jail call recordings violated the due process clause of the New Mexico Constitution and NMRA, Rule 5-501(A)(3) be denied without prejudice. Finally, I recommend the Court dismiss all of Mr. Pamphille's other claims with prejudice.

**VII.    Certificate of Appealability**

Lastly, I address whether Mr. Pamphille is entitled to a certificate of appealability. No appeal may be taken from a "final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may be issued only if Mr. Pamphille "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As set forth above, Mr. Pamphille has failed to make this showing. I therefore recommend that the Court deny Mr. Pamphille a certificate of appealability.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma***, 73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

---

JENNIFER M. ROZZONI
United States Magistrate Judge